IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DIANA AURORA<br>HOLGUIN-GALLEGOS (03),<br><br>Defendant. | Case No. 16-20016-03-DDC |

**MEMORANDUM AND ORDER**

This matter is before the court on defendant Diana Aurora Holguin-Gallegos's Amended Unopposed Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 508).[1] Ms. Holguin-Gallegos asks the court to reduce her sentence under § 3582(c)(1)(A) primarily because of her family circumstances. The government doesn't oppose the request and agrees Ms. Holguin-Gallegos is a proper candidate for immediate release from the Bureau of Prisons (BOP). *See* Doc. 509. For the following reasons, the court grants the unopposed motion.

**I.   Background**

In March 2016, a federal grand jury returned a 12-count Indictment against Ms. Holguin-Gallegos and several of her co-defendants. *See generally* Doc. 40. The Indictment charged Ms. Holguin-Gallegos with: (1) conspiracy to distribute and possess with the intent to distribute more than 50 grams of methamphetamine, violating 21 U.S.C. § 846; (2) use of a communication facility to facilitate the offense, violating 21 U.S.C. § 843(b); and (3) possession with intent to

---

[1] Doc. 508 amended Ms. Holguin-Gallegos's original Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 507). The court thus denies as moot that original motion (Doc. 507).

distribute more than 50 grams of methamphetamine, violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii).  Doc. 40 at 1–2, 4, 5–6.

About two and a half years later, in October 2018, the government filed a two-count Information charging Ms. Holguin-Gallegos with one count of conspiracy to possess with intent to distribute 50 grams of methamphetamine, violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846, and one count of conspiracy to launder money, violating 18 U.S.C. § 1956(h).  Doc. 223.  Ms. Holguin-Gallegos entered a plea agreement with the government under Fed. R. Crim. P. 11(c)(1)(C) and pleaded guilty to those two offenses.  Doc. 227.  Ms. Holguin-Gallegos's Presentence Investigation Report (PSR) calculated a total offense level of 38 and a criminal history category of I, producing a Guidelines sentencing range of 235 to 293 months' imprisonment.  Doc. 239 at 26 (PSR ¶ 250).  But the Rule 11(c)(1)(C) agreement provided for a term of 120 months' imprisonment, substantially below the Guidelines range.  *Id.* (PSR ¶ 251).  In January 2019, the court accepted the Rule 11(c)(1)(C) agreement and sentenced Ms. Holguin-Gallegos to 120 months' imprisonment.  Doc. 244 at 2.

Ms. Holguin-Gallegos has been in federal custody since February 23, 2016.  Doc. 239 at 2.  She has thus served about five and a half years of her sentence.  She is currently incarcerated at a Federal Correctional Institution (FCI) in Aliceville, Alabama.  *See* Doc. 508 at 2–3.  Her projected release date is August 31, 2024.  *Id.* at 5; Diana Aurora Holguin-Gallegos (Reg. No. 27925-031), https://www.bop.gov/inmateloc/ (last visited Sept. 30, 2021).

## II.     Legal Standard for Compassionate Release

The court may modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A); *see also United States v. Maumau*, 993 F.3d 821, 830–31 (10th Cir. 2021) (reviewing § 3582(c)(1)'s history, text, and requirements).  The court may grant a motion for reduction of sentence only if "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable."  *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

For the first step of this analysis, the Tenth Circuit recently held that it does not view the "extraordinary and compelling reasons" requirement in § 3582(c)(1)(A) as jurisdictional.  *See United States v. Hald*, 8 F.4th 932, 942 n.7 (10th Cir. 2021) (declining "to read a jurisdictional element into § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication (much less a 'clear statement') to that effect").  And for the second step, the Sentencing Commission has not issued an "applicable policy statement" for defendant-filed compassionate release motions like this one.  *McGee*, 992 F.3d at 1050; *Maumau*, 993 F.3d at 837.  So, unless "and until the Sentencing Commission issues such a policy statement, the second requirement does not apply."  *United States v. Quinn*, No. CR 10-20129-03-KHV, 2021 WL 3129600, at *2 (D. Kan. July 23, 2021).

Although the government doesn't oppose Ms. Holguin-Gallegos's motion, the court nevertheless applies this standard to her motion.

### III.  Analysis

Before the court considers the merits of Ms. Holguin-Gallegos's motion, it first addresses the exhaustion or lapse requirement in the "administrative rights" aspect of § 3582(c)(1)(A).

3

     A.     **Exhaustion or Lapse**

A prisoner may file a motion for compassionate release with the court "after either exhausting administrative rights to appeal the Director of the BOP's failure to file such a motion, or the passage of 30 days from the defendant's unanswered request to the warden for such relief." *Maumau*, 993 F.3d at 830. The Tenth Circuit recently explained that it has "not decided whether the exhaustion requirement should be treated as jurisdictional or as a claims-processing rule." *United States v. Akers*, 855 F. App'x 465, 466 (10th Cir. 2021) (mem.) (affirming district court's denial of compassionate release because prisoner had failed to exhaust administrative remedies after the government raised the exhaustion issue). Some unpublished opinions from this year treat administrative exhaustion as a mandatory claims-processing rule. *See United States v. Watson*, 851 F. App'x 136, 137 n.1 (10th Cir. 2021) ("This court has not issued a binding decision on whether exhaustion under § 3582(c)(1)[(]A) is a jurisdictional requirement, but unpublished decisions indicate that exhaustion is a mandatory claim-processing rule."); *see also United States v. Avalos*, 856 F. App'x 199, 202 n.2 (10th Cir. 2021) ("Although this court has not ruled on the issue, our unpublished decisions only indicate that exhaustion is a mandatory claim-processing rule."). But other unpublished Circuit opinions have explained that a "failure to exhaust" administrative remedies deprives the court of subject matter jurisdiction. *See, e.g.*, *United States v. Salcido*, 849 F. App'x 230, 231–32 (10th Cir. 2021) (vacating district court's order denying compassionate release and remanding "with instructions to dismiss [defendant's motion] for lack of jurisdiction" because defendant failed to exhaust administrative remedies).

Whether exhaustion is a claims-processing rule or jurisdictional, the court finds that Ms. Holguin-Gallegos has exhausted her administrative remedies. On August 17, 2021, Ms. Holguin Gallegos filed a request for compassionate release with the warden of FCI-Aliceville. *See* Doc.

4

508-1 at 1. The warden received the request the next day, on August 18, 2021. *See* Doc. 508-2 at 1. Ms. Holguin-Gallegos alleges—and the government doesn't dispute—that the warden did not respond to her request. Because 30 days have passed since Ms. Holguin-Gallegos sent the request to the warden, the court concludes that Ms. Holguin-Gallegos has exhausted her administrative remedies.

      **B.**      **Extraordinary and Compelling Reasons**

Ms. Holguin-Gallegos argues that her family circumstances are "extraordinary and compelling" and thus justify a reduction in sentence. *See* Doc. 508 at 3–5. Specifically, she cites her young children. Ms. Holguin-Gallegos gave birth to her daughter while detained and could spend only an hour with her after giving birth. *Id.* at 4; Doc. 239 at 24 (Presentence Investigation Report ("PSR") ¶ 239). Her daughter is now five years old and lives with Ms. Holguin-Gallegos's mother in Mexico. Doc. 508 at 4. Ms. Holguin-Gallegos's mother is 80 years old and uses a walker, making it difficult for her to care for a young child. *Id.* Ms. Holguin-Gallegos's sister helps care for her daughter when she can. *Id.* But the father of the child is a co-defendant in this case and received an 18-year sentence, so he can't help care for her. *Id.* Ms. Holguin-Gallegos hasn't seen her daughter since she was born. *See id.*

Ms. Holguin-Gallegos also has a son from a past relationship. *See id.* He now lives with his father in Texas. *Id.* Ms. Holguin-Gallegos maintains communication with her son and his father, but she hasn't seen him since he was four years old, when she was arrested in this case. *Id.* He's now nine years old. *See id.* Ms. Holguin-Gallegos argues that her "need to care for her daughter and reestablish a relationship with her son are extraordinary and compelling reasons" for a sentence reduction. *Id.* The government agrees with Ms. Holguin-Gallegos. *See* Doc. 509 at 2. And the court does as well.

5

Under the circumstances Ms. Holguin-Gallegos presents, her 80-year-old mother (who uses a walker) has great difficulty caring for Ms. Holguin-Gallegos's five-year-old daughter. And the only other person who can help care for Ms. Holguin-Gallegos's daughter is her sister. But Ms. Holguin-Gallegos's motion implies that her sister can't care for her daughter full-time. *See* Doc. 508 at 4 ("Ms. Holguin-Gallegos'[s] sister Beatriz helps care for [Ms. Holguin-Gallegos's daughter] as much as she is able, but is . . . not able to bring her to visit Ms. Holguin-Gallegos."). Thus, it appears that Ms. Holguin-Gallegos is best situated to care for her five-year-old daughter. Because the government doesn't contest Ms. Holguin-Gallegos's motion, the court assumes that Ms. Holguin-Gallegos's family circumstances present extraordinary and compelling reasons for her compassionate release. So, the court next considers whether 18 U.S.C. § 3553(a)'s sentencing factors favor that relief.

### C.  Sentencing Factors in § 3553(a)

Before the court may reduce a defendant's term of imprisonment under § 3582(c)(1)(A), the court must consider whether defendant poses a danger to the community, and the relevant sentencing factors under § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).[2] If a proposed modified sentence strays too far from the original sentence, the § 3553(a) factors cannot support the sentence reduction, even where a defendant faces extraordinary and compelling circumstances. *See United States v. Pope*, No. 16-10039-JTM, 2020 WL 5704270, at *1 (D. Kan. Sept. 24, 2020) ("This court has concluded that compassionate release based on COVID-19 related concerns should be denied where the resulting sentence would materially depart from an

---

[2] Those factors include: (1) defendant's personal history and characteristics; (2) her sentence relative to the nature and seriousness of her offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a).

appropriate § 3553(a) sentence[.]"); *United States v. Kaufman*, No. 04-40141-1-JTM, 2020 WL 4196467, at *2 (D. Kan. July 21, 2020) ("Even when an older inmate faces some serious medical condition, compassionate release should be denied if it would radically alter the appropriate § 3553 sentence.").

Here, Ms. Holguin-Gallegos requests that the court reduce her sentence to time served. Right now, Ms. Holguin-Gallegos has served a little more than five and a half years of her sentence. Her current release date is August 31, 2024, a little less than three years from now (presumably because of good time credits). So, about 35 months now remain of Ms. Holguin-Gallegos's original 120-month term of imprisonment. In ordinary circumstances, the court would not reduce a sentence to time served where this much of a defendant's sentence remained. But the court finds here that the analysis of the § 3553(a) factors has shifted just far enough to justify a reduction in sentence. The court emphasizes, however, that it reaches this conclusion in significant measure because the government agrees with Ms. Holguin-Gallegos's motion—and especially because the government argued that after "thorough review of the defendant's entire case, and discussion amongst government officials associated with the prosecution of this matter," the court should grant Ms. Holguin-Gallegos compassionate release "for the reasons set forth in her motion." Doc. 509. Those reasons are as follows.

*First*, under § 3553(a)(1), Ms. Holguin-Gallegos's family circumstances, described above, have changed since sentencing. Most importantly, Ms. Holguin-Gallegos's daughter is growing up without her mother and her elderly grandmother is essentially her sole caretaker. This circumstance supports a reduced sentence. *See United States v. Munoz-Nava*, 524 F.3d 1137, 1148 (10th Cir. 2008) (affirming district court's sentence which considered defendant's unique family circumstances to justify a downward departure in sentence).

7

*Second*, the court recognizes Ms. Holguin-Gallegos's rehabilitative efforts and good conduct while in custody for the last five and a half years. Ms. Holguin-Gallegos has not violated any disciplinary rules in prison. *See* Doc. 508-4. She has maintained employment during her incarceration as an orderly, cleaning bathrooms and showers in her unit. *See* Doc. 508 at 5; Doc. 508-3 at 1. And she has completed English, Spanish, and health classes. *See* Doc. 508-3 at 1. This effort is commendable and helps to support a reduced sentence.

*Third*, Ms. Holguin-Gallegos has served a substantial portion of her sentence during the COVID-19 pandemic, which created conditions far harsher than the court anticipated at sentencing. At least one court has recognized that this is especially true at FCI-Aliceville, where Ms. Holguin-Gallegos is incarcerated:

> [I]nmates, particularly those in prisons such as FCI-Aliceville which have had a significant number of COVID-19 cases, have faced substantially more severe conditions during the COVID-19 pandemic than were contemplated at the time of sentencing. The severity has increased both because of the specter of contracting COVID-19 and the more significant restrictions that the BOP has had to institute in its efforts to control the pandemic, including curtailing prison programs, greater restrictions on movement, and suspension of visitation for a lengthy period of time.

*United States v. Taylor*, No. CR TDC-15-0265, 2021 WL 243195, at *4 (D. Md. Jan. 25, 2021).[3]

*Fourth*, Ms. Holguin-Gallegos is not a U.S. citizen, and U.S. Immigration and Customs Enforcement (ICE) will take her into custody upon her release and begin deportation proceedings. *See* Doc. 508-3 at 1 (noting ICE detainer). Ms. Holguin-Gallegos notes in her motion that she "simply wishes to return to her daughter in Mexico and to reestablish a role in her son's life however she can." Doc. 508 at 4. The court hopes that Ms. Holguin-Gallegos

---

[3] The court notes that currently, FCI-Aliceville is still under the harshest restrictions BOP maintains because of COVID-19. *See* FCI-Aliceville, https://www.bop.gov/locations/institutions/ali/ (noting FCI-Aliceville is at "Level 3 Operations," where "Level 3" is the most severe level of restrictions) (last visited Sept. 30, 2021).

follows through on that plan and does not appear before this court again.  The court emphasizes once more that in granting Ms. Holguin-Gallegos's motion, it relies on the government's consent to grant the motion and thus assumes that Ms. Holguin-Gallegos and the government are correct that Ms. Holguin-Gallegos poses "no danger to the community."  *Id.*

*Finally*, the court recognizes that although Ms. Holguin-Gallegos was convicted of a serious drug offense, she played a minor role in the offense.  *See* Doc. 239 at 22 (PSR ¶ 219) (noting three-level reduction in her base offense level because she "was a minor participant" in criminal activity).  And importantly, this was her first criminal conviction—she had a criminal history category of I.  *Id.* at 23 (PSR ¶ 231).

In this close and unique case, where the § 3553(a) factors have moved somewhat—and especially where the government doesn't oppose the motion—the court concludes that a reduction in sentence to time served is appropriate.

### IV.     Conclusion

The court therefore concludes in its discretion that extraordinary and compelling reasons justify reducing Ms. Holguin-Gallegos's sentence to time served under § 3582(c)(1)(A).  For all the above reasons, the court also finds that reducing Ms. Holguin-Gallegos's sentence to time served satisfies the § 3553(a) sentencing factors.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Ms. Holguin-Gallegos's Amended Unopposed Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 508) is granted.  The court reduces Ms. Holguin-Gallegos's sentence to time served.  Ms. Holguin-Gallegos will be released to the custody of Immigration and Customs Enforcement under the existing detainer.

**IT IS FURTHER ORDERED THAT** Ms. Holguin-Gallegos's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 507) is denied as moot.

**IT IS SO ORDERED.**

**Dated this 5th day of October, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
